E-FILED
Monday, 16 November, 2026 04:22:40 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

UNITED STATES OF AMERICA,
Plaintiff,

v.

DERICK LOUIS VANCIL,
Defendant.

Case No. 4:18-CR-40034

## Opinion & Order

Now before the Court are Defendant Derick Louis Vancil's *pro se* Motion for Compassionate Release (D. 49) and counseled Amended Motion for Compassionate Release (D. 54). Vancil argues that his family circumstances, rehabilitation, and inability to earn First Step Act time credits because of his 18 U.S.C. § 924(c) conviction collectively warrant compassionate release. The United States opposes the Amended Motion. For the reasons set forth below, the Amended Motion is DENIED, and the pro se Motion is MOOT.

**I**

**A**

On May 11, 2018, in Moline, Illinois, Derick Louis Vancil possessed four ounces of actual methamphetamine with intent to distribute and carried a .22-caliber pistol to facilitate his drug trafficking. Vancil admitted that he had obtained the pistol in exchange for methamphetamine and frequently acquired quarter-pound or greater quantities of methamphetamine for distribution in the Quad Cities. On September 19, 2019, Vancil pleaded guilty pursuant to a written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C) to possession with intent to distribute at least five grams of methamphetamine and possession of a

firearm in furtherance of a drug-trafficking crime. The parties agreed to a sentence of 216 months' imprisonment, and the Government agreed to dismiss the felon-in-possession charge.

Vancil's adult criminal history included convictions for home invasion in 2002, aggravated assault in 2008, and assault in 2014. He also had three driving-under-the-influence convictions from 2017 and 2018 and was on bond for a DUI when he committed the federal offenses. At sentencing, Vancil had 13 criminal-history points and fell within Criminal History Category VI, resulting in an advisory Guidelines range of 151 to 188 months on the drug count, followed by the mandatory consecutive 60-month term on the firearm count. On January 16, 2020, the Court accepted the parties' agreement and sentenced Vancil to 156 months on the drug count and a consecutive 60 months on the firearm count, for an aggregate term of 216 months' imprisonment, followed by four years of supervised release.

On May 22, 2024, the Court granted Vancil's motion for a sentence reduction under Amendment 821. Removal of one status point reduced his criminal-history score from 13 to 12 and placed him in Criminal History Category V, producing an amended advisory range of 140 to 175 months on the drug count, followed by the mandatory consecutive 60-month term. The Court reduced Vancil's aggregate sentence from 216 months to 205 months' imprisonment.

**B**

By the time Vancil filed his amended motion on July 21, 2026, he had spent approximately six and one-half years in Bureau of Prisons custody. He is presently incarcerated at FCI Bennettsville and has a projected release date of February 5, 2033.

While incarcerated, Vancil has completed approximately thirty-five courses in subjects including physical health, computers, psychology, language, history, employment skills, and mental health. He has also served as a mentor, mental-health companion, suicide companion, and GED tutor. Vancil is pursuing an HVAC certification and, since February 18,

2026, has worked in an HVAC assignment at FCI Bennettsville. Bureau of Prisons records further reflect that he completed drug education, satisfied his financial obligation, and had no unmet First Step Act needs as of February 19, 2026. His PATTERN assessment credits him with twenty-four completed programs and two work programs and records no incident reports during the relevant 120-month period. That assessment classifies his general recidivism risk as low and his violent and overall risk levels as medium.

Vancil asserts that his twelve-year-old son needs his physical presence, guidance, and support, although his mother currently cares for the child. His mother reports that Vancil communicates with his son whenever possible, provides encouragement and fatherly advice, and has maintained a strong bond with him despite the limitations of incarceration.

If released, Vancil proposes to live with his mother in Lake Placid, Florida, help care for his son, seek employment in the HVAC field, and comply with any period of home confinement and the conditions of his four-year term of supervised release.

## II

### A

Vancil argues that his family circumstances, extensive rehabilitation, and inability to earn First Step Act time credits because of his conviction under 18 U.S.C. § 924(c), considered collectively, constitute extraordinary and compelling reasons for a sentence reduction.

Vancil first relies on his relationship with his twelve-year-old son, who is being cared for by his mother, Sandra Durbin. He asserts that, despite his incarceration, he regularly communicates with his son, provides guidance and encouragement, and seeks to remain actively involved in his upbringing. Vancil contends that his physical presence would provide his son with important parental guidance, stability, and support during adolescence.

Vancil next emphasizes his rehabilitative efforts during almost seven years of incarceration, as recounted in Section I.B, *supra*.

Vancil asserts that he has incurred no disciplinary infractions during his incarceration and has reduced his recidivism-risk classification from high-high to medium, with his general risk assessed as low and his violent risk assessed as medium. He maintains that he is two points away from a low violent-risk classification and emphasizes that his programming contributed to the reduction in his risk score.

Vancil acknowledges that rehabilitation alone cannot constitute an extraordinary and compelling reason, but argues that it may be considered together with his family circumstances and other asserted grounds. He contends that his sustained programming, institutional conduct, mentoring, vocational training, and reduced recidivism risk demonstrate genuine personal change and support a reduction when considered collectively.

Vancil also argues that his § 924(c) conviction renders him statutorily ineligible to earn First Step Act time credits for completing educational and vocational programming. He emphasizes that he nevertheless pursued extensive programming despite knowing that the resulting credits could not reduce his sentence. According to Vancil, that limitation may be considered in determining the extent of an otherwise warranted reduction.

As to the § 3553(a) factors, Vancil argues that his post-sentencing rehabilitation, changed family circumstances, institutional record, and inability to receive First Step Act time credits were not fully reflected in his original sentence. He asserts that his conduct in custody demonstrates remorse, maturity, and a reduced likelihood of recidivism.

**B**

The Government responds that Vancil's separation from his son, rehabilitation, and ineligibility for First Step Act time credits, whether considered individually or collectively, do not

establish extraordinary and compelling reasons for compassionate release.

Regarding Vancil's family circumstances, the Government argues that separation from a minor child is a common consequence of incarceration rather than an especially unusual circumstance. It further contends that Vancil's circumstances are not comparable in gravity to those identified in the applicable policy statement because his son has an available caregiver—Vancil's mother—who, by Vancil's own account, has done tremendous work caring for him. The Government therefore maintains that Vancil has not shown the death or incapacitation of his son's caregiver or any similar circumstance leaving his son without adequate care.

The Government next argues that Vancil's statutory ineligibility for First Step Act time credits cannot support compassionate release because Congress deliberately excluded prisoners serving sentences under § 924(c) from eligibility for those credits. In its view, reducing Vancil's sentence because of that exclusion would undermine Congress's decision to withhold time credits from persons convicted of specified serious offenses. The Government also contends that statutory distinctions affecting sentence reductions are ordinary features of legislative line-drawing and are not comparable in gravity to the circumstances recognized in the compassionate-release policy statement.

As to rehabilitation, the Government acknowledges that Vancil completed approximately thirty-five courses, earned his GED, completed drug education, and had no documented disciplinary incidents as of February 2026. It argues, however, that these achievements are not extraordinary because many federal prisoners maintain clean disciplinary records or receive low or minimum recidivism-risk classifications. The Government further observes that Vancil's overall PATTERN classification remains medium, with a low general-risk score and a medium violent-risk score. It contends that Vancil has not provided evidence establishing that his programming, institutional conduct, or PATTERN assessment reliably

demonstrates that he will remain law-abiding outside the controlled prison environment.

The Government separately argues that Vancil has not carried his burden of showing that he no longer presents a danger to another person or the community, relying heavily on his offense conduct and criminal history.

Finally, the Government argues that the § 3553(a) factors independently weigh against a reduction. It observes that, only twenty-nine months earlier, Vancil sought and obtained an Amendment 821 reduction to 205 months while representing that the reduced sentence adequately reflected the seriousness of his offenses, promoted respect for the law, provided deterrence, and protected the public. The Government contends that Vancil's material personal circumstances have not meaningfully changed since that reduction because he had already earned his GED, completed more than twenty courses, maintained a clean disciplinary record, remained ineligible for First Step Act time credits, and was separated from his son.

The Government emphasizes that Vancil now seeks a reduction from 205 months to 120 months, amounting to an approximately forty-two percent reduction from his amended sentence and an approximately forty-five percent reduction from the 216-month sentence imposed under his binding plea agreement. It argues that reducing the sentence to the aggregate mandatory minimum would fail to account for Vancil's extensive criminal history and would create an unwarranted disparity by treating him like a defendant with little or no criminal history. The Government further contends that such a reduction would undermine the binding plea agreement, diminish respect for the law, and inadequately serve the purposes of punishment, deterrence, and protection of the public. The Government therefore requests that the Court deny the Amended Motion.

**III**

A court generally "may not modify a term of imprisonment once it has been imposed" unless modification is expressly authorized by statute or Rule 35 of the Federal

Rules of Criminal Procedure. 18 U.S.C. § 3582(c), (c)(1)(B). Compassionate release under § 3582(c)(1)(A) is a narrow exception to that rule of finality. *Rutherford v. United States*, 146 S. Ct. 1320, 1326 (2026).

Section 3582(c)(1)(A) permits a court, after considering the applicable § 3553(a) factors, to reduce a term of imprisonment if extraordinary and compelling reasons warrant a reduction and the reduction is consistent with applicable policy statements issued by the Sentencing Commission. A defendant may file such a motion only after fully exhausting all administrative rights to appeal the Bureau of Prisons' failure to bring a motion on the defendant's behalf or after 30 days have elapsed from the warden's receipt of the defendant's request, whichever occurs first. 18 U.S.C. § 3582(c)(1)(A).

The exhaustion requirement is a mandatory claim-processing rule, although it is a waivable affirmative defense. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020). The defendant bears the burden of establishing extraordinary and compelling reasons warranting a reduction. *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021).

The governing policy statement requires that extraordinary and compelling reasons warrant the reduction, that the defendant not present a danger to another person or the community, and that the reduction be consistent with the policy statement. U.S.S.G. § 1B1.13(a) (2025).

Family circumstances may constitute an extraordinary and compelling reason upon the death or incapacitation of the caregiver for the defendant's minor child or adult child who cannot provide self-care because of a disability or medical condition; the incapacitation of the defendant's spouse or registered partner when the defendant is the only available caregiver; or the incapacitation of the defendant's parent when the defendant is the only available caregiver. U.S.S.G. § 1B1.13(b)(3). The policy statement also encompasses similarly grave circumstances involving another immediate family member, or a person whose relationship with the defendant is

similar to that of an immediate family member, when the defendant would be the only available caregiver. For this purpose, an immediate family member includes a child, spouse, registered partner, parent, grandchild, grandparent, or sibling. U.S.S.G. § 1B1.13(b)(3)(D).

Rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). Rehabilitation may nevertheless be considered together with other circumstances in determining whether extraordinary and compelling reasons warrant a reduction. 18 U.S.C. Appx. § 1B1.13.

The Court must consider the asserted circumstances both individually and collectively because a combination of circumstances may be materially different from each circumstance viewed separately. *United States v. Vaughn*, 62 F.4th 1072, 1073 (7th Cir. 2023). Aggregation, however, does not cure the absence of circumstances that collectively rise to the level required by § 3582(c)(1)(A).

Even when extraordinary and compelling reasons exist, the Court must determine whether the applicable § 3553(a) factors support a reduction. 18 U.S.C. § 3582(c)(1)(A).

## IV

### A

The Court does not minimize the hardship Vancil's incarceration imposes on his son and mother. Vancil relies on his relationship with his twelve-year-old son, whom he co-parents with his mother, and expresses a desire to provide his son with in-person love, guidance, and stability while assisting his mother. Those concerns are understandable and worthy of sympathy, but they do not satisfy the demanding standard for compassionate release.

As Vancil effectively acknowledges by invoking the policy statement's catch-all provision rather than its enumerated caregiver provision, his family circumstances do not involve the death or incapacitation of his son's caregiver. To the contrary, Vancil states that his mother continues to care for his son and

has done “tremendous work” parenting him. His circumstances therefore are not comparable in gravity to those of a minor child who has no other available caregiver.

The Court recognizes that separation from one’s child is painful, but it is, unfortunately, a common consequence of incarceration rather than an especially unusual circumstance. The loss of liberty and resulting separation from family, friends, and society are ordinary features of imprisonment and part of what makes incarceration punitive and deterrent. Accordingly, Vancil’s desire to provide his son with in-person love, guidance, and stability, sincere though it undoubtedly is, does not satisfy the policy statement’s family-circumstances provision.

**B**

Vancil’s rehabilitative progress is laudable. He reports almost seven years without an incident report, completion of more than thirty-five programs, satisfaction of his First Step Act programming needs, a reduced recidivism score, participation in a residential Challenge program, service as a mentor, mental-health and suicide companion, and GED tutor, and HVAC work and training. Those accomplishments reflect sustained and commendable effort.

But under U.S.S.G. § 1B1.13(d), rehabilitation alone cannot constitute an extraordinary and compelling reason for compassionate release, although it may be considered together with other circumstances. Moreover, Vancil’s PATTERN assessment continued to classify both his overall recidivism risk and his violence risk as medium. His institutional record, while favorable, is not so unusual as to be extraordinary. The Court therefore finds that Vancil’s educational and vocational programming, work history, clean disciplinary record, and improved risk assessment demonstrate genuine rehabilitative progress but do not rise to the level of extraordinary rehabilitation.

**C**

Vancil’s inability to earn First Step Act time credits likewise does not constitute an extraordinary and compelling

reason. His conviction under 18 U.S.C. § 924(c) makes him ineligible to receive those credits for educational or vocational programming, although it does not prevent him from participating in such programming.

Congress deliberately made persons serving sentences under specified statutes, including § 924(c), ineligible for First Step Act time credits. That legislative line-drawing, and any resulting disparity, is an ordinary feature of sentencing legislation rather than an especially unusual personal circumstance. More fundamentally, granting compassionate release because Vancil cannot earn those credits would undermine Congress's deliberate choice to withhold them from persons convicted under § 924(c), effectively allowing him to obtain through compassionate release the sentence reduction Congress denied through the time-credit statute.

Time-credit ineligibility also falls outside the traditional heartland of compassionate release, which concerns a prisoner's personal circumstances, and is not similar in gravity to the circumstances identified in U.S.S.G. § 1B1.13(b)(1)–(4). It therefore cannot supply the required extraordinary and compelling reason for a sentence reduction.

**D**

The result is no different when Vancil's asserted grounds are considered together. The Court must consider the circumstances both individually and collectively because their combination may be materially different from each circumstance viewed separately; aggregation, however, does not cure the absence of circumstances that collectively satisfy 18 U.S.C. § 3582(c)(1)(A).

Here, ordinary family separation, rehabilitation that cannot independently support relief, and a congressionally mandated exclusion from time credits do not become "especially unusual and convincing" merely through aggregation. Nor is their combination similar in gravity to the circumstances enumerated in U.S.S.G. § 1B1.13(b)(1)–(4), as the catch-all provision requires. The Court therefore concludes

that Vancil has not established extraordinary and compelling reasons for compassionate release, whether his three asserted grounds are considered individually or collectively.

## V

Even if Vancil had established an extraordinary and compelling reason, the applicable § 3553(a) factors independently foreclose relief. The Court gives substantial weight to his offense conduct: Vancil possessed four ounces of actual methamphetamine with intent to distribute, carried a .22-caliber pistol to facilitate his drug trafficking, and admitted obtaining that pistol in exchange for methamphetamine. Because the conduct combined large-scale drug distribution with firearm possession, it strongly implicates the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide adequate deterrence, and protect the public.

Vancil's criminal history also weighs heavily against release. His record includes convictions for home invasion in 2002, aggravated assault in 2008, and assault in 2014. He had three DUI incidents during the three years preceding this federal case, being on bond for DUI when he committed the present drug and firearm offenses. That record demonstrates that prior arrests, convictions, and sentences did not adequately deter him or protect the public and weighs strongly against the requested reduction. His current PATTERN assessment, which places him at medium overall recidivism risk and medium violence risk despite his programming and clean disciplinary record, further counsels against release.

The Court has nevertheless given meaningful consideration to Vancil's favorable post-sentencing conduct. As already recounted, he has completed extensive educational and rehabilitative programming, works in HVAC, has served as a mentor, mental-health and suicide companion, and GED tutor, and has reduced his risk classification from its asserted original "High-High" designation. But many of those favorable considerations have already resulted in a reduced sentence. In

May 2024, the Court reduced Vancil's sentence from 216 months to 205 months under Amendment 821 after his criminal-history calculation fell from thirteen points and Criminal History Category VI to twelve points and Criminal History Category V. In granting that reduction, the Court expressly considered favorable facts including more than sixty months without a disciplinary infraction and Vancil's completion of educational and vocational courses.

The principal circumstances Vancil now invokes were substantially present when the Court imposed the reduced 205-month sentence: he had earned his GED, completed more than twenty classes, maintained a clean disciplinary record, remained ineligible for First Step Act time credits because of his § 924(c) conviction, and remained separated from his son. Because the prior reduction already credited his rehabilitation and other favorable circumstances, those same considerations do not justify the substantially larger reduction he now seeks.

The requested reduction is considerable. Reducing Vancil's sentence from 205 months to 120 months would amount to an approximately forty-two percent reduction from his already reduced sentence and an approximately forty-five percent reduction from the originally agreed 216-month sentence. The record identifies no material change in Vancil's personal circumstances that would justify such a substantial departure from the Court's recent § 3553(a) determination.

On balance, Vancil's serious armed drug-trafficking conduct, extensive and violent criminal history, prior failure to be deterred, and continuing public-safety concerns outweigh his laudable programming, clean disciplinary record, and family hardship—particularly because the Court already considered the principal favorable factors when reducing his sentence to 205 months. The Court therefore finds that the existing 205-month sentence remains sufficient but not greater than necessary and denies Vancil's request for compassionate release.

**VI**

For the reasons set forth *supra*, the Amended Motion is DENIED (D.54). Consequently, the *pro se* Motion (D. 49) is MOOT.

*It is so ordered.*

Entered on November 16, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE